```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

DAVID P. ALLEMAND, ET AL      *          CIVIL ACTION

VERSUS                        *          NO: 09-7502

APACHE CORPORATION, ET AL     *          SECTION: "D"(4)
```

**ORDER AND REASONS**

Before the court are the following motions:

(1) **"Motion to Strike Affidavit of Stephen M. Charbonnet, MD"** **(Doc. No. 70)** filed by Defendant, Wood Group Production Services, Inc. (Wood);

(2) **"Motion for Summary Judgment" (Doc. No. 51)** filed by Defendant Wood; and

(3) **"Motion for Summary Judgment" (Doc. No. 53)** filed by Defendant, Apache Corporation (Apache).

Plaintiffs, David P. Allemand and Katrina Allemand, oppose the motions. The motions, set for hearing on Wednesday, December 15, 2010, are before the court on briefs, without oral argument. Now, having considered the memoranda of counsel, the record, and the applicable law, the court rules.

On or about August 20, 2009, Plaintiff David Allemand allegedly contracted a Staphylococcus Aureas skin infection ("staph infection") while performing maintenance and repair work as a valve technician for Pro-Valve Services, Inc. on South Pass #62 Platform, a fixed oil and natural gas production platform owned by Apache and operated by Wood.  This suit was consequently filed.

Dr. Stephen Charbonnet, an urologist at Terrebonne General Medical Center, treated Plaintiff for his staph infection.  On September 8, 2009, Dr. Charbonnet wrote that "[i]t is very likely that this infection was contracted while David was working ...."  (Charbonnet letter, Doc. No. 58-8).  On August 24, 2010, Dr. Charbonnet was deposed and he confirmed this statement.  (Charbonnet Deposition, Doc. No. 70-3, at pp. 72-73).  However, Dr. Charbonnet also testified:

> Q: If the Wood Group's infectious disease expert testified that the recognized incubation period for the Staph aureus abscesses is four to 10 days, would you have any information to refute that?
>
> . . .
>
> A: No.
>
> Q. Would you defer to an infectious disease expert for issues regarding the recognized incubation period for Staph aureus infections?
>
> A. Yes.
>
> Q: So, Dr. Charbonnet, isn't it true that without knowledge of the relevant incubation period for the Staph

2

aureus and the exact timeframe of Mr. Allemand's presence on the defendant's platform, you can't say to a degree of medical certainty that he contracted it at work?

. . .

A.  I wouldn't be able to tell you that.  All I know is that he has symptoms developed when he was at work.  That is it.

. . .

Q.  Is it true that without knowledge of the incubation period for the Staph aureus and without knowledge of the exact timeframe of his presence on the platform at work, that you can't, without knowing those two things, say with a degree of medical certainty that he contracted it at work?

. . .

A.  Yes.

(Charbonnet Deposition at pp. 53-55).

In the Defendants' instant Motions for Summary Judgment, Defendants rely on the Affidavit of Dr. F. Brobson Lutz, a purported expert in internal medicine, infections disease and public health, to argue that Plaintiffs cannot satisfy their burden of proving medical causation.  Defendants maintain that Plaintiffs cannot prove that Plaintiff David Allemand contracted his staph infection on the South Pass #62 given the brief timeframe between his arrival on the platform on the morning of Thursday, August 20, 2009, and the onset of his symptoms on Friday, August 21, 2009 and Saturday, August 22, 2009, because this timeframe (according to

Defendants) is "*substantially shorter*" than the four (4) days minimum biological incubation for such a staph infection as opined by Dr. Lutz. (*See* Wood Motion, Doc. No. 51 at p. 1, and Lutz Affidavit, Doc. No. 51-2 at ¶12).

In opposing Defendants' Motions for Summary Judgment, Plaintiffs rely in part on the September 8, 2009 letter written by Dr. Charbonnet and confirmed in his August 24, 2010 deposition testimony, and his Affidavit (recently executed on November 17, 2010) to argue that there is a genuine issue of material fact as to when Plaintiff contracted his staph infection. (*See* Charbonnet Affidavit, Doc. No. 58-2).

In this Affidavit, Dr. Charbonnet states that:

> In addition to my personal knowledge and experience treating David Allemand, I have reviewed the following materials in developing my opinions in this affidavit: Affidavit of Dr. Lutz, MD, affidavit of George Morrison[1] and deposition transcript of Dr. Mark Boquet, MD.

(*Id*. at ¶4, footnote added). However, Plaintiff did not designate Dr. Charbonnet as an expert witness nor furnish this Affidavit by Plaintiffs' expert report deadline.[2]

Dr. Charbonnet further attests in his Affidavit that he

---

[1] The Affidavit of George Morrison is contained in the record at Doc. No. 58-5). In his affidavit, Mr. Morrison attests that while he was on the same South Pass 62 in 2007, he contracted a staph infection. He also attests that subsequently contracted other staph infections on offshore Apache rigs..

[2] Upon motion of the parties, the court extended Plaintiff's original expert report deadline to November 4, 2010. Plaintiff did not list Dr. Charbonnet as an expert witness.

disagrees with Dr. Lutz's opinion that Plaintiff could not have contracted a staph infection offshore. (*Id.* at ¶11). Dr. Charbonnet elaborates that:

> Based on my medical training and experience, it is not biologically impossible to have an incubation period of 24 hours for Staphylococcus aureus. Further, while Staphylococcus aureus may commonly have an incubation period of four to ten days, it is generally recognized in my field that the incubation period for Staphylococcus aureus can be 24 hours.

(*Id.*).

Dr. Charbonnet also attests that: "[i]f individuals on the same Apache oil platforms had Staphylococcus aureus skin infections, as indicated in the **Morrison affidavit**,[3] it is highly likely that Mr. Allemand contracted his infection by coming into contact with objects that had previously come in contact with other individuals who had the Staphylococcus aureus skin infection." (*Id.* at ¶13, & emphasis & footnote added).

However, not inconsistent with his September 8, 2009, letter and confirmed by his deposition testimony of August 24, 2010, Dr. Charbonnet also attests that "[b]ased on his treatment of Mr. Allemand," it is "highly likely that Mr. Allemand came in contact with the Staphylococcus aureus bacteria while working on Apache oil

---

[3] *See* fn. 2, *supra*.

platforms," and "it is highly likely that Mr. Allemand came in contact with the Staphylococcus aureus bacteria on a linen or towel and within 24 hours start[ed] producing symptoms of infection." (*Id*. at ¶¶9 & 10). Dr. Charbonnet adds that "it is medically possible and highly likely that Mr. Allemand contracted his Staphylococcus aureus skin infection on the Apache oil platforms by coming into contact with an object that contained bacteria. (*Id*. at ¶12).

In ruling on the instant motions, the court finds that Wood's **"Motion to Strike Affidavit of Stephen M. Charbonnet, MD" (Doc. No. 70)** should be and is hereby **GRANTED** to the extent that Dr. Charbonnet will *not* be allowed to give *expert or opinion testimony* as that found in ¶¶4, 11 and 13 of his Affidavit.

However, the **"Motion to Strike Affidavit of Stephen M. Charbonnet, MD"** should be and is hereby **DENIED** to the extent that Dr. Charbonnet will be allowed, as Plaintiff's *treating physician*, to give testimony as that found in the remainder of his Affidavit.

The court further finds that there is a genuine issue of material fact as to when Plaintiff David Allemand contracted his staph infection. Thus, the court **DENIES** the **"Motion for Summary Judgment" (Doc. No. 51)** filed by Defendant Wood and the **"Motion for Summary Judgment" (Doc. No. 53)** filed by Defendant Apache.

New Orleans, Louisiana, this **5th** day of **January**, **2011**.

                                                  A.J. McNAMARA
                                        UNITED STATES DISTRICT JUDGE